114-0762, Viola Harrell v. Searschikov Have you got an opponent? I do. Thank you. May it please this Honorable Court, Ms. Kastner and Ms. Harrell. My name is David Barish and I represent the appellant, Viola Harrell. I have two issues to present before this Honorable Court. One, whether the Workers' Compensation Commission violated the law of the case, and that would be a de novo standard. And second, whether the denial of temporary total disability and medical benefits, and especially setting the cessation of benefits as of September 1, 2004, is contrary to the manifest way to the evidence. It's your position that the Commission violated the law of the case, right? Yes, it is, Your Honor. As regards to the law of the case, we start with 06-IWCC-350. What does that case say? They found that as of the trial date, May 7, 2004, Ms. Harrell was temporarily totally disabled. They found that her condition of ill-being was causally related to the accident of December 11, 2002, and they ordered the employer to find suitable work or to do a vocational assessment. They specifically stated in their decision, the Commission finds the opinions of Dr. Anakini more persuasive than those of Dr. Spencer. At that time, if we take a snapshot, we know Ms. Harrell had been referred to a pain specialist and had injections to her neck. We know that she had seen a neurologist, a Dr. Wojcik. We know that she had had a psychological exam that found she had no overlay. And we know that the Commission said, specifically found the petitioner's testimony credible, especially in light of the testimony of her supervisor, Mr. Fatikas. This decision was affirmed by the Circuit Court of Cook County, and there was no further appeal. So we have this snapshot at that time, and now we look and say, what's happened since then? So how do we look at the arbitrator in the Commission's decision in 13 IWCC 162? There's a summary affirmance, so we look to the language of the arbitrator's decision. The arbitrator states at page 17 of her decision that she's aware of the law of the case doctrine, but on the next page, she says, the arbitrator does not find Dr. Anakini's opinion credible. In Dr. Anakini, petitioner found a sympathetic physician who took the role of advocate and was in regular communication with her attorney. That's me. Dr. Anakini lost her advocacy, let her advocacy on behalf of the petitioner cloud her clinical judgment and objectivities. It sounds pretty much to me completely at odds with the Commission's decision in 06 350 and the law of the case. The arbitrator goes on to say, regarding petitioner's non-carpal tunnel complaints, the arbitrator adopts the opinions of Dr. Walsh to the extent that they do not conflict with the law of the case. So let's look at Dr. Walsh's opinion and figure out what's left after applying the law of the case doctrine. Dr. Walsh says, the treatment at Mercy Work was reasonable and necessary. Additional treatment by petitioner's primary care physician at Gottlieb, that's Dr. Anakini, and by doctors at McNeil Hospital are not causally related to the petitioner's alleged work injury. But the Commission. The same thing that the employers IME said at the first arbitration. Exactly the same thing. Which they rejected. Which the Commission rejected. It was a wolf in Dr. Walsh's clothing. The Commission specifically found these related. They had found the accident. And then also they found the accident, but he still has to use the word alleged because he just doesn't want to admit that there was an accident. And I think that gives us a hint as to where his head is. He clearly violates the law of the case when he says in his report, more likely than not, the petitioner reached maximum medical improvement with regards to the alleged injury when she concluded treatment at Mercy Works in the weeks following her injury. The ongoing care and treatment provided to the patient over the years is not causally related to the injury in 2002. That's the exact same thing that the first employers IME said. That's exactly right.  And so if Dr. Walsh is saying a few weeks after the accident the woman's reached maximum medical improvement and nothing's causally related, Dr. Walsh's opinion is contrary to the law of the case. And in his deposition he says, he admits that there's really no change. The Commission had already found this woman disabled. So if we rule out Dr. Walsh and say his opinion is contrary to the law of the case, and really just a rehashing of Dr. Spencer's previously rejected opinion, what do we have here? And now I'll look at a more mundane analysis under the manifest way to the evidence standard, which I realize I have a terrific burden standing before this panel arguing this. But then let's take the scorecard and ask ourselves, if we eliminate Dr. Walsh, what's left? Dr. Annakini, who the Commission had found persuasive one time, is now unpersuasive, according to the Commission. She says he's still disabled. And the doctors before the prior decision, Dr. Gu, Wojcik, Rest, all say that she's disabled. Since then, she sees an orthopedist, Dr. Ho, he says she needs pain management. She goes back to Mercy Works in 2007. They recommend a functional capacities examination. Now, that examination cuts both ways. It says she's at a sedentary level, but she doesn't pass the validity criteria. But she goes back to Mercy Works, and they still find her at a sedentary level. She goes to Rehabilitation Institute of Chicago at her doctor's request. Two different doctors there say she needs a comprehensive pain management program. We send her to an evaluating doctor, Dr. Cronin. He says she's unable to work. The employer sends her to Dr. Walsh. And I've already discussed Dr. Walsh's opinion. And the reality is the employer knew that they didn't have a card that they could play. They knew they had an opinion that said the exact same thing as Dr. Spencer, who had already been rejected. How do we know that? Because they didn't even rely on it. They sent her to Dr. Conowitz. Why would you bother with Dr. Conowitz if you already had the winner in your hand? They sent her to Dr. Conowitz, and Dr. Conowitz says this woman's myofascial complaints are clinically significant and part of the employee's traumatic accident. He recommends a functional capacities evaluation. Now, that examination is delayed for a bit due to the carpal tunnel syndrome. And when she's finally released to take it, she's found to have a valid profile and a sedentary result. So if we do the scorecard, the reality is eliminating Dr. Walsh, it's a shutout. There is absolutely no evidence to the contrary that Leola Harrell was temporarily totally disabled. And that is why I'm asking this honorable panel to reverse the commission's decision and reinstate and award temporary total disability compensation. If this panel disagrees with me and says they are entitled to rely on Dr. Walsh and you don't agree with my argument as regards to the law of the case, well, then Dr. Walsh examined Leola Harrell on February 1, 2010. Yet the commission sets the date for cessation of benefits. It's September 1, as if they threw a dart, September 1, 2004, relying on Dr. Walsh. So relying on a 2010 exam, they terminate benefits six months after the prior trial in 2004, six years earlier. It's a non sequitur. What happened on September 1? Ms. Harrell went to see her treating physician, Dr. Anakini, who continued the same restrictions. So it's a complete mystery as to how they arrive at September 1, 2004, for a date to suspend benefits, even if they're allowed to rely on Dr. Walsh. Let me ask a question. In the first commission decision, they ordered a vocational assessment. That is correct. Did that ever happen? That never happened. And frankly, I think both sides share in the blame for that. Ultimately, the litigation continued, and although it's a 2004 decision, we don't have a result that everybody has until 2006, at which time they start paying benefits, and nobody considers this vocational evaluation, and my client's getting paid. I didn't push them. They didn't offer it. There's certainly no question that at this stage, that same order makes complete sense, because we now have a functional capacities evaluation saying you're at a sedentary level, and there's a real question. Is there anything out there for you? I ask you to look no further than Commissioner Terrell's dissent to his two other panel members, asking them how, in light of the prior decision, they could arrive at that award. Thank you. Counsel will give you some time. Good morning. Good morning. Jill Kastner on behalf of the defendant in this case. Briefly, I'm going to respond to his argument before I get into the bulk of mine. He's talking about the scorecard, okay? Take Dr. Walsh's opinion out, and where's the score? Where are we? I think we need to look at the treating doctor's records. The treating doctor from 2004 on really doesn't change her opinion. Nothing really changes. There's no treatment offered. There's, yeah, she goes to her. Yeah, she's seen. She's seen for updated notes. She's seen. There's a point in there where she talks about, yeah, I see her every month. I update her activity restrictions. Okay. So she's updating her activity restrictions. That doesn't mean she needs treatment. That doesn't mean she needs anything other than a continued note. So I think we need to really look past Dr. Walsh as well and look to the treating doctor. Where does this MMI date come from, September 1, 2004? It comes straight from the treating doctor. The commission says that they picked September 1, 2004 after she's had MRIs. MRIs are normal. She had an EMG, also normal. They, at that point, she had seen a neurologist. The neurologist said maybe some physical therapy. She had physical therapy. They discharged her because it wasn't helping. She should see a rheumatologist. According to Dr. Annachini's notes, the rheumatologist recommended. Wait a second. I want to understand your position with respect to Dr. Walsh vis-à-vis Dr. Spencer. Did the commission rely on Walsh's opinion? Well, they relied on it to the extent that it didn't contradict the original. Should they have done it under the law of the case in the first place? Did he say anything that didn't contradict the original? Well, his opinion was that she didn't require additional treatment because the original injury, not that it wasn't related, but that the original injury wasn't that severe. They also, she also found malingering. But the commission, I think, could rely on Dr. Walsh to the extent of anything subsequent to September, sorry, May 7 of 2004. Well, that's correct if he recognized the distinction between her condition when he saw her and the condition that she had at the time of the original 19B proceeding. If, on the other hand, he persists in suggesting she had no condition at the original proceeding, he's sunk completely because now it violates the law of the case. You've got to throw him out. So the question becomes, does his opinion, can it be interpreted as suggesting he's only talking about her condition at the time he saw her and not speaking about the condition having gone away before the first 19B? Well, I think you can say that because he doesn't see her until 2010. But he was specifically asked about, you know, after 2004, and his answer was, in essence, she never had this injury. Well, he said in probability after 2004 it was no longer necessary, that she didn't necessarily didn't need any treatment after 2004. But from your standpoint, I mean, so he's asked a question that relates back to what had previously been determined, and either, you know, what if he truly believes that the first decision was incorrect? I mean, he either, you know, has to stand mute there and not say anything, or he expresses his opinion. I mean, just because it's included in there, do you have to then throw away the entire opinion? And you would say no. So is there a way to segregate his opinions, Walsh's opinions, so that you can identify that which had previously been disposed of and then concentrate or focus on that which is appropriately part of the second 19B hearing? Well, I think that the distinction is that Dr. Walsh was asked to comment on her condition at that time. In the deposition, he does say that anything after 2004 is not necessary. He does not say she didn't require any treatment at all. He didn't say that. He said that the Mercy Works treatment was reasonable, and more likely than not, anything after 2004 is not reasonable. And that's the exact same thing Spencer said that the Commission rejected in the first decision. Spencer said the same thing, right? Right. But I think the Commission was looking at her condition at the time of that hearing. The Commission in 2012 is entitled to look at her condition any time subsequent to that May 7 of 2004 hearing date. He has to prove an ongoing relationship. He doesn't get to just say because it was once related, it forever is related. He has to prove that it still continues, that her current condition at the time of hearing is still related. And Walsh said it's not related because it wasn't related before 2004. Well, he said that. That's what he said, right? I think you're splitting hairs, because he said that originally, yes, it was related. She had some contusions. She fell. I mean, the accident is not in dispute. She falls down the stairs. She gets some bumps and bruises. And he says that, in his opinion, that probably didn't cause the need for a lot. But at the same time, he's not the finder of fact. He's a doctor. His opinion is that she required some treatment and she should have gotten better. If the Commission found at that time she didn't get better and she needed more treatment, then okay. But after May 7 of 2004, she still has to prove an ongoing need for treatment. Let me ask you this pointed question. Sure. Obviously, whether the testimony of Walsh and Spencer were consistent is something we need to look at. But rather than parse back and forth on that, if we come to the conclusion hypothetically that there is the inconsistency and it does violate the law of the case doctrine, what's your fallback position? Or do you have one? Well, I think that if you find that Dr. Walsh's opinion is contrary to the law of the case, is that what you're asking? Right. I don't think it matters. Because the Commission still found as the fact finder that her condition after May 7 was stabilized. She'd reached MMI as of September 1 of 2004, 16 5 7 weeks after the first one. What was their basis for that decision? That she had undergone MRIs. She had seen a rheumatologist. She had seen a neurologist. And they awarded an additional orthopedic surgeon. They didn't award it. They gave it to her. So she had the original May 7, 2004 hearing. And then she has all this treatment. But between May 7, 2004 and September 1 of 2004, she saw an orthopedic surgeon. So they let her exhaust all of those specialties. The orthopedic surgeon said she wasn't a surgical candidate. That's the change. That's the change between the first one and the second one. She sees the orthopedic surgeon. He doesn't think she's a surgical candidate. So now the commission has new evidence, new findings, new things to look at between May 7 of 2004 and September 1 of 2004. And that's their basis for MMI. So she's still on September 1, even under that, unable to go back to her previous job? She was, yes. So why wouldn't she have been entitled to voc rehab and maintenance after September 1, as ordered by the commission in the original? And counsel touched on that. It's really unclear from the record why the voc assessment never occurred. I don't know if it wasn't offered. I don't know if it wasn't demanded. There's nothing in the record about it. My point is she's cut off September 1, but she's still in the same position, can't go back to her job by all accounts, by the FCE and so forth. And she's not, I mean, wouldn't she get maintenance? Well, but why does she get maintenance? Because she's not really job seeking. And she's reached MMI. So her condition is stabilized. She's not entitled to temporary total disability because she's at MMI. So our obligation for temporary total basis. When did Dr. Walsh opine that she reached MMI? He opined that she had reached MMI sometime in 2004. No, he opined, he said she reached MMI with regards to the injury in 2002. After the Mercy Works treatment. And no additional treatment is necessary. Now, that violates the law of the case, and that's just as simple as that. So now, when he does that, what is there to rely on in his opinion? What's left? Well, but I think that goes back to the fact that the commission didn't violate the law of the case. So even if we throw out Dr. Walsh's opinion, as you're suggesting, let's take that out of the mix entirely, there's still enough in the record to point to that MMI date of September 1, 2004. She, there's really no objective findings. There's, her MRI is essentially normal. Her EMG is normal. She has an invalid FCE. Almost all of the doctors agree. Even her treating physician, Dr. Annachini, says there's nothing objective to base treatment on. She discouraged her from seeing the orthopedic surgeon in August of 2004. She told her it's probably not going to help. There's a point where she complains of exacerbation, and the petitioner wants a new MRI. And the treating physician says, well, I really doubt that the MRI is going to show anything positive. Everybody agrees there's nothing objective. So let's take Walsh's opinion out. Let's look at what's left. And we have a treating physician who agrees there's nothing objectively there. So there's nothing really to treat. All of that treatment, if you even can even call it treatment, because she's going back. That's okay. I'm sorry. I'm trying not to interrupt you, but all of that was exactly the same at the time of the original commission decision. There was no objective evidence and so forth and so on. And the commission, I mean, you're re-arguing that the original commission decision was a bad decision. But that decision is the law of the case. Right. But I think it's also significant to note that at the time of that original decision, there wasn't really any treatment recommended. I'm sorry. There wasn't any treatment recommended. There was a VOC assessment order. There was TTD up through that date because they had found she still was entitled to it. So even at the time, if you look at the medical at that time, there's still really nothing there. There's nothing objective. There's, again, no treatment really being offered. I mean, she goes back to the doctor for notes. So there's nothing that's changing her underlying condition. How is eight years of medical treatment necessary when in 2012 she testified that she felt the same? Nothing had changed. Her subjective complaints never changed. They never went away. I think there's enough in the record to support their MMI finding of September 1 of 2004. And if you don't have any other questions, I would ask you to affirm. Thank you. If anybody had stated that Leola Harrell had improved or gotten better, I would have no argument to present to this honorable court. But the reality is nobody said that. Counsel admits this. She says there's no change in the opinion. There's no change in the condition. So if we go back to our snapshot at the time of the trial from the prior decision, Petitioner's condition has not improved since that time. I disagree, saying that she would have been at maximum medical improvement in 2007. Comprehensive pain management program was recommended by two doctors at the Rehabilitation Institute of Chicago. That was never done. Well, if we were to vacate the commission's decision because of an inappropriate reliance upon Dr. Walsh, is there sufficient evidence in the record for them to fix an MMI date without his opinion? Is there any evidence in the record that could fix an MMI date without his opinion? I do believe there is, Your Honor. And I believe that date is the date of the last functional capacities evaluation with a valid profile shortly before we tried the case. Whose makes the decision as to whether there is evidence of that MMI date or what that date should be? Us or the commission? That is the commission, Your Honor. So if we were to agree with you that they inappropriately relied on Dr. Walsh, our only remedy is to vacate their opinion or reverse it, vacate it, and send it back and tell them to do it over again, understanding that Walsh's opinion violated the law of the case. Is that what we do? I understand your conundrum. I feel the evidence states otherwise. I proved that she was temporarily totally disabled as of the date of trial. And eliminating that. And we're supposed to find that date? That's our job? I'm not going to tell you your job, Your Honor. Well, let's say you put evidence in the record, especially for Cronin, that she had not reached MMI as of the date of trial, but your opponent will tell us there's also evidence in the record that she had. There was no objective evidence that she still suffered from anything that they could do anything for. So I suppose the real question that I have is, assuming we agree with you, what's the remedy? One remedy, unfortunately, is to reiterate the same thing the first commission panel said, and it's to insist on a vocational assessment. I think both parties were justified in accepting the fact that the City of Chicago paid benefits to my client for a number of years, rather than doing anything constructive about it. And I think to punish her for it and now give a $100,000 overpayment of benefits is a sin. Thank you, Your Honor. My problem is in remedy. That's where I'm at. I understand. Okay. Counsels, thank you. Written decision will be issued shortly.